[No. C004846. Third Dist. July 28, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
TRAVIS BROWN, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Gary A. Binkerd and George Spanos, Deputy Attorneys General, for Plaintiff and Appellant.

Rhoda Lee Sapirstein, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

**PUGLIA, P. J.**—Defendant was charged in an information with two counts of violating Health and Safety Code section 11350, possession of heroin and cocaine, respectively. The trial court dismissed the information after it granted defendant's motion to suppress evidence. (Pen. Code, § 1538.5.) The People appeal, contending the trial court erred as a matter of law. We shall reverse.

At about 10:30 a.m. on a Sunday, Officer Barner was driving a marked police vehicle. He observed defendant walking in front of a pool hall and bar in an area known for heavy traffic in drugs and prostitution. Barner observed that defendant held something in his hand down along his side. As Barner slowed the patrol car to get a better look at what defendant was

carrying, defendant stared at the patrol car and then began to run away. Barner immediately turned his patrol car around to follow defendant. When Barner regained sight of defendant he saw that defendant had a knife and a pair of scissors in his hand. Barner called for defendant to stop and drop the knife and scissors. Defendant complied.

Barner exited his patrol car and pat-searched defendant for weapons. Barner was joined by backup Officer McKnight. During the pat-search, Barner felt and removed two hard objects from defendant's pockets, believing they might be weapons. These items were a small cardboard box and an opaque plastic pill bottle. Barner removed all the contents of defendant's pockets and put them on the hood of the patrol car. At some point during the pat-search, Barner asked defendant whether he was on parole and defendant replied he was. Defendant also told Barner the name of his parole officer. Officer McKnight opened the cardboard box and plastic pill bottle and discovered heroin and cocaine therein.

## I

The People contend the detention of defendant was lawful. The trial court made no determinations of credibility and there were no evidentiary conflicts to be resolved by the trial court. Therefore we measure the undisputed facts against the constitutional standard of reasonableness, using our independent judgment. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961].)

"[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question." (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957], fn. omitted.)

Officer Barner listed several factors which caused him to suspect defendant was involved in criminal activity. First, defendant was in an area known for drug-related crime and appeared to be concealing something in his hand. Second, defendant fled upon seeing Barner's patrol car. While these two factors by themselves would have been insufficient to justify defendant's detention (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 478 [198

Cal.Rptr. 538, 674 P.2d 240]), the addition of a third factor, defendant's possession of weapons, supports the officer's detention of defendant.

Defendant seeks to minimize the fact he was carrying a steak knife and a pair of scissors. Defendant curiously emphasizes the fact he did not dispose of these items while endeavoring to evade the officer, arguing such activity is "completely consistent with a picture of innocent behavior." Defendant's flight, however, was a better indicator of his behavior than his decision not to dispose of the knife and scissors. In any event, it does not assist defendant that other explanations consistent with innocent activity might be equally reasonable. ██ "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' [Citation.]" (*In re Tony C., supra,* 21 Cal.3d at p. 894.) ██ Defendant was properly detained.[1]

Because defendant's detention was lawful his admission while detained that he was on parole is not "tainted fruit of the poisonous tree."

## II

██ The People bear the burden of justifying the warrantless search of defendant's person. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].) ██ The initial pat-search conducted by Barner was a reasonable protective measure incident to a valid detention. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 885 S.Ct. 1868].) Because defendant was carrying two weapons, it was prudent to suspect defendant might be carrying other weapons as well.

The record is unclear as to Barner's subjective reasoning for and the timing of his removal of the contents of defendant's pockets. Barner testified he began emptying all the contents from defendant's pockets onto the hood of the patrol car, and he pat-searched defendant "checking for weapons, narcotics, anything he might have on him." However it is unclear whether the full search of defendant's pockets occurred before or after defendant admitted he was on parole. The timing of this admission relative to Barner's extracton of the two containers holding contraband is similarly unclear.

---

[1] Defendant does not contend, nor did he in the trial court, that his detention began at an earlier point in time, such as when Barner first initiated his pursuit of defendant. (See *Michigan* v. *Chesternut* (1988) 486 U.S. 567, 576 [100 L.Ed.2d 565, 573, 108 S.Ct. 1975]; cf. *People* v. *Washington* (1987) 192 Cal.App.3d 1120, 1125 [236 Cal.Rptr. 840].)

Even assuming arguendo that Barner extracted the two containers before learning of defendant's parole status, they were hard objects which he was justified in removing in his protective search for possible weapons. (*People v. Hill* (1974) 12 Cal.3d 731, 746-747 [117 Cal.Rptr. 393, 528 P.2d 1]; *People v. Mack* (1977) 66 Cal.App.3d 839, 851 [136 Cal.Rptr. 283].)

Before he opened the containers, Barner was aware of defendant's parole status. ■ The same level of reasonable suspicion lawfully to detain will suffice to justify a parole search. (*People v. Burgener* (1986) 41 Cal.3d 505, 534 [224 Cal.Rptr. 112, 714 P.2d 1251].) Defendant contends, however, that even if the officer had reasonable suspicion, the search was invalid because it was not approved beforehand by his parole officer. Although *Burgener, supra,* refers to a parole agent who authorized police officers to undertake a search upon reasonable suspicion, the opinion also stressed the fact "[t]hat the search was conducted by law enforcement officers for a law enforcement purpose is irrelevant." (*Id.* at p. 536.) *Burgener* disapproved of *People v. Coffman* (1969) 2 Cal.App.3d 681, 688-689 [82 Cal.Rptr. 782], to the extent it was inconsistent. (*Ibid.*) To require the police to seek permission to search from a parole officer would be a meaningless formality, for any parole officer who refused to authorize a search given reasonable suspicion of criminal activity "would have been derelict in his duties." (*People v. Montenegro* (1985) 173 Cal.App.3d 983, 988 [219 Cal.Rptr. 331].)[2]

■ The search of the pill bottle and the cardboard box is also justified as incident to defendant's lawful arrest for violating a standard parole condition prohibiting parolees from carrying knives with blades longer than two inches. (Cal. Code Regs., tit. 15, § 2512, subd. 5(c).) Barner testified he was aware of this parole condition and that defendant's knife had a blade over two inches long. ■ It does not matter whether the officer's search of defendant's person preceded his formal arrest as long as he had probable cause to arrest. (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 111 [65 L.Ed.2d 633, 645-646, 100 S.Ct. 2556].) This is so even where the officer, as here, subjectively believed defendant was only being detained and was not under arrest. (*People v. Adams* (1985) 175 Cal.App.3d 855, 862-864 [221 Cal.Rptr. 298].)

■ The trial court erred in ordering the narcotics seized from the two containers suppressed.

---

[2] The case relied upon by defendant, *People v. Samaro* (Cal.App.) (H003350) was on March 30, 1989, ordered not to be published in the Official Reports.

The order dismissing the information is reversed and the cause remanded to the trial court with directions to enter a new and different order denying the motion to suppress.

Sparks, J., and DeCristoforo, J., concurred.