17 Cal.App.4th 524 (1993)
21 Cal. Rptr.2d 397
THE PEOPLE, Plaintiff and Appellant,
v.
VICTOR MANUEL LIMON, Defendant and Respondent.
Docket No. H010016.
Court of Appeals of California, Sixth District.
June 28, 1993.
*528 COUNSEL
George W. Kennedy, District Attorney, and Jay P. Dufrechou, Deputy District Attorney, for Plaintiff and Appellant.
Stuart Rappaport, Public Defender, and Stephen Elrick, Deputy Public Defender, for Defendant and Respondent.
OPINION
BAMATTRE-MANOUKIAN, J.
An information charged defendant Victor Manuel Limon with possessing heroin for sale (count one; Health & Saf. Code, § 11351) and possessing cocaine for sale (count two; Health & Saf. Code, § 11351). Defendant made an unsuccessful suppression motion at his *529 preliminary hearing. He renewed the suppression motion in the superior court based on the transcript of the preliminary hearing and on further testimony. (Pen. Code, § 1538.5, subd. (i).) The superior court granted defendant's motion and concluded that the police did not have probable cause to remove a closed key box from defendant's pocket. The People indicated they were unable to proceed in light of the court's ruling and the superior court dismissed the case.
On appeal the People contend that the police had probable cause to remove the closed key container from defendant's pocket. For the reasons stated below, we agree and reverse the order of dismissal.

Facts
The facts are essentially uncontradicted. (1) "`Insofar as the evidence is uncontradicted, we do not engage in a substantial evidence review, but face pure questions of law.' [Citation.]" (People v. Trujillo (1990) 217 Cal. App.3d 1219, 1224 [266 Cal. Rptr. 473].) Any conflicts in the evidence are resolved in favor of the superior court ruling. (Ibid.)
On March 9, 1992, at 12:30 p.m. San Jose Police Officer Paul Panighetti and his partner Officer Shuper were walking to their patrol car across a grassy field of the Arbuckle Elementary School. Officer Panighetti testified that he saw the following events occur about 200 yards away. Defendant, wearing a red cap, was standing near another male at the rear of a carport of an apartment complex near the elementary school. Defendant walked about 10 feet away to a pickup truck, bent down near the right front wheel well, removed something, and walked back to the other male. The men touched hands. At the preliminary examination, Panighetti testified that he saw the men exchange something, although he could not see what they exchanged. At the superior court hearing, he clarified that he could not see what was in their hands. Defendant walked back to the truck and placed something where he had previously removed something. The other fellow walked out of the carport and out of Panighetti's view. This took a minute or less.
Panighetti and his partner, Officer Shuper, walked over to investigate. They were in plain clothes.
Panighetti lost sight of defendant for about a minute as Panighetti walked around some apartments. When he next saw defendant, defendant was wearing the same red cap, standing at his original location, and talking to a woman who was sitting in a car.
As Panighetti and Shuper approached defendant, Panighetti saw 2 other males standing about 10 to 15 feet from defendant near a car in the carport. *530 Other individuals were 20 to 30 feet away in a walkway between 2 apartment buildings.
Shuper approached defendant while Panighetti walked up to the two men. Shuper asked defendant to step away from the car containing the woman. Panighetti asked the two men to step away from the building. While Panighetti was talking with the two men, he noticed a syringe on a pile of junk next to an open car in the carport.
When all three suspects were together, Panighetti pat-searched them. Defendant was cooperative and not aggressive. Defendant did not reach for his pocket.
In defendant's left front pants pocket, Panighetti felt a hard, rectangular object about three inches long, one and one-half inches wide, and three-quarters of an inch deep. Panighetti did not recognize it by touch.
Panighetti asked defendant in English what was in his pocket. Defendant did not appear to understand the question. Panighetti pulled defendant's pocket open and looked in. Panighetti saw a hide-a-key box with a magnet on the back.
Panighetti removed the box from defendant's pocket and told Shuper to ask defendant in Spanish if he could look inside. Shuper talked to defendant. Defendant replied. Shuper told Panighetti to go ahead and look inside. Inside Panighetti found four packages of heroin and two packages of cocaine. Shuper found nothing in the truck's wheel well.
The above observations of defendant's conduct had a special significance to Officer Panighetti due to his training and experience in investigating drug crimes. He had been working in the narcotics unit for four years and had participated in over seven hundred investigations involving heroin and cocaine. He explained as follows.
Panighetti thought he saw a drug transaction when defendant removed something from near the truck's wheel well and handed something to a man who then left. When he saw defendant talking to a woman sitting in a car, Panighetti thought it was another buyer.
In Panighetti's experience, street-level drug dealers sell drugs on the streets and in carports. Buyers walk or drive up, engage in a quick transaction, and leave. The dealers often hide their drugs nearby and retrieve them as needed.
*531 Panighetti was familiar with defendant's location. It was designated in San Jose as a crackdown area for drugs and weapons. The area is known for gang activity, violence, and drugs. Although Panighetti could not provide statistics, he had seen about 20 drug transactions in that large block of apartment buildings.
Employees of the nearby elementary school told Panighetti they had seen drug transactions in the carports. Panighetti had seen three or four drug transactions in the same carport over the past six and one-half years. He had arrested someone in the past three months for buying crack cocaine in the same carport.
When Panighetti saw a syringe in the carport, it confirmed his suspicion about drug activity. Syringes are commonly used to inject narcotics.
Panighetti had three reasons for pat-searching defendant. One was that Panighetti and his partner were outnumbered not only by the three suspects but also by the other people in the immediate area. The second reason was that drug dealers often carry weapons, although Panighetti could not give a percentage. The third reason was that the area was known for weapons. Panighetti had arrested people carrying firearms, knives, and baseball bats in the area.
Panighetti testified: "I didn't know if he was armed and dangerous at that time, but I did believe that the propensity for him being armed was significant enough for me to pat search him." Panighetti acknowledged that he saw no weapon on defendant and had no idea whether he had a weapon.
When Panighetti felt the hard, rectangular object in defendant's pocket, he thought it might have been a knife, either folded or in a case.
When Panighetti saw the hide-a-key box in defendant's pocket, he "had a pretty good suspicion" that narcotics were inside. Panighetti had seen narcotics in a key case once before, although he could not recall the details.

Was defendant's detention justified?
(2a) Officer Panighetti acknowledged that what he observed was consistent with a person retrieving a key from a hide-a-key container for an associate. However, it also had a criminal connotation in light of Officer Panighetti's experience.
(3) As this court explained in People v. Wilkins (1986) 186 Cal. App.3d 804 [231 Cal. Rptr. 1], a police officer can detain a person when the officer *532 is aware of "specific and articulable facts" suggesting "that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he [or she] intends to stop or detain is involved in that activity." (Id. at p. 809.) A police officer's expertise can attach criminal import to otherwise innocent facts. (Cf. People v. Mims (1992) 9 Cal. App.4th 1244, 1248 [12 Cal. Rptr.2d 335]; People v. Medina (1972) 7 Cal.3d 30, 37 [101 Cal. Rptr. 521, 496 P2d 433].)
Panighetti knew defendant's location as a site for drug activity. (4) While a person cannot be detained for mere presence in a high crime area without more (People v. Aldridge (1984) 35 Cal.3d 473, 478-479 [198 Cal. Rptr. 538, 674 P.2d 240]; People v. Loewen (1983) 35 Cal.3d 117, 124 [196 Cal. Rptr. 846, 672 P.2d 436]; People v. Wilkins, supra, 186 Cal. App.3d at p. 811; People v. Gallant (1990) 225 Cal. App.3d 200, 210 [275 Cal. Rptr. 50]), this setting is a factor that can lend meaning to the person's behavior. (People v. Holloway (1985) 176 Cal. App.3d 150, 155 [221 Cal. Rptr. 394] [detention]; In re Frederick B. (1987) 192 Cal. App.3d 79, 86 [237 Cal. Rptr. 338] [detention]; People v. Mims, supra, 9 Cal. App.4th at p. 1248 [arrest].)
(2b) Defendant was not merely present in a drug-ridden area. Defendant engaged in what appeared to be a hand-to-hand exchange. Though an exchange of an unrecognizable object for money on a street in a high crime area does not justify arrest (Cunha v. Superior Court (1970) 2 Cal.3d 352, 357 [85 Cal. Rptr. 160, 466 P.2d 704]; Remers v. Superior Court (1970) 2 Cal.3d 659, 665-666 [87 Cal. Rptr. 202, 470 P.2d 11]), it may justify detention if the area is known for drug sales.
In In re Frederick B., supra, 192 Cal. App.3d 79, relied on by the People, a school security officer saw two high school students exchanging paper currency on school grounds. The officer was aware of two prior narcotics-related incidents in the same area. The court (1st Dist., Div. 4) held that the students' detention was justified since the students' behavior was consistent with the particular type of crime for which that location was known. (Id. at pp. 86-87.)
In People v. Jones (1991) 228 Cal. App.3d 519 [279 Cal. Rptr. 56], relied on by defendant, the police saw one man give another currency at night on a street of high narcotics activity. The court (1st Dist., Div. 2) held that "the mere fact that respondent received money from another person on the street in an area known for drug activity is insufficient justification for a detention." (Id. at p. 524.) Jones did not mention In re Frederick B.
We need not resolve this conflict in authority about the significance of merely receiving money on the street in an area known for drug sales. Here *533 there was more than an apparent exchange. Before and after the exchange defendant walked over and reached into an apparent hiding place. This conduct suggested drug sales.
In People v. Maltz (1971) 14 Cal. App.3d 381 [92 Cal. Rptr. 216], relied on by the People, the defendant had engaged in two exchanges in an area known for drugs and the defendant had several times returned to one location. One officer's experience was that drug sellers often stash their drugs nearby. (Id. at p. 387.) This stashing behavior contributed to the finding of probable cause to arrest the defendant. (Id. at pp. 392-393.)
Defendant seeks to distinguish Maltz in that the arresting officers had made about 100 drug arrests in the immediate area, the defendant's conduct occurred in the 3-hour daily span of greatest drug activity, in 40 minutes the defendant had engaged in 2 exchanges, and the defendant's conduct was consistent with other drug transactions in the area. (14 Cal. App.3d at pp. 391-393.) In our view these additional circumstances in Maltz demonstrate why the officers had probable cause to arrest. Here we are only concerned at this point with reasonable grounds to detain.
Defendant relies on People v. Conley (1971) 21 Cal. App.3d 894 [98 Cal. Rptr. 869], decided by the same panel that decided Maltz. There the police saw a car pull into a parking lot known for drug activity. Two teenage boys got out. One walked to the rear of the car, looked around, reached behind the rear bumper, and walked off with the other boy. A police officer walked up, reached behind the bumper, and found a plastic bag containing drugs. (Id. at p. 897.) The appellate court reasoned that there was no furtive gesture, since the boys did not know the police were watching. "Here, we have no more than an effort to hide something from the general public. Even if the undercover officer had been sure that an object was being deposited in the bumper area, he could be no more certain that it was contraband than it was a spare set of keys to the car, or some other innocuous item. Merely reaching behind a bumper is as consistent with innocent activity as with criminal activity. (See Cunha v. Superior Court, [supra,] 2 Cal.3d 352, 357; Remers v. Superior Court, [supra,] 2 Cal.3d 659, 665.)" (Id. at p. 899.)
In re Tony C. (1978) 21 Cal.3d 888 [148 Cal. Rptr. 366, 582 P.2d 957], later held: "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his [or her] investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal...." (Id. at p. 894.) As defendant acknowledges, In re Tony C., *534 supra, disapproved of prior authority stating that a detention could not be based on activity that appeared no more criminal than innocent. (Ibid.)
People v. Conley, supra, 21 Cal. App.3d 894 is distinguishable in two respects. First, at issue there was whether the police had probable cause to search the car's bumper, not merely reasonable grounds for a detention. Second, the car's occupants did not engage in any exchange in the area of drug activity.
We conclude that reasonable grounds to detain defendant existed based on the officer's specific knowledge of prior drug activity in the area and in the carport, defendant's hand-to-hand exchange, and defendant's hiding something in connection with the exchange.

Were the pat-search and the look into defendant's pocket justified?
(5) As the United States Supreme Court has recently restated, "`[W]hen an officer is justified in believing that the individual whose suspicious behavior he [or she] is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search `to determine whether the person is in fact carrying a weapon.' [Citation.] `The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his [or her] investigation without fear of violence....' [citation] ... [A] protective search  permitted without a warrant and on the basis of reasonable suspicion less than probable cause  must be strictly `limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" (Minnesota v. Dickerson (1993) 508 U.S. ___, ___ [124 L.Ed.2d 334, 344, 113 S.Ct. 2130].)
(6) Officer Panighetti's reasons for pat-searching defendant were that he and his partner were outnumbered, drug dealers often carry weapons, and that the area was known for weapons. While the fact the officers were outnumbered might not justify a pat-search, here there were other factors as well.
The connection between weapons and an area can provide further justification for a pat-search. As In re Frank V. (1991) 233 Cal. App.3d 1232, 1241 [285 Cal. Rptr. 16], stated: "`[T]hat an area involved increased gang activity may be considered if it is relevant to an officer's belief the detainee is armed and dangerous. While this factor alone may not justify a weapon search, combined with additional factors it may.' (People v. King (1989) 216 Cal. App.3d 1237, 1241 [265 Cal. Rptr. 370].)"
*535 In People v. Huerta (1990) 218 Cal. App.3d 744, 750 [267 Cal. Rptr. 243], this court stated: "It was reasonable to believe a person entering a residence of illicit drug activity might be armed. `[W]here police officers are called upon to execute a warranted search for narcotics within a private residence they have the lawful right to conduct a limited Terry pat-down search for weapons upon the occupants present while the search is in progress.' (People v. Thurman (1989) 209 Cal. App.3d 817, 824 [257 Cal. Rptr. 517].)"
We recognize while Officer Panighetti did not have a prior determination by a magistrate that there was probable cause to believe defendant was a drug dealer, he still had some basis, summarized above, for believing defendant was selling drugs. "`[I]t is not unreasonable to assume that a dealer in narcotics might be armed'" and subject to a pat-search. (U.S. v. Salas (9th Cir.1989) 879 F.2d 530, 535.)
We conclude that Officer Panighetti had an objectively reasonable belief that defendant might be armed and dangerous. The belief was based on the combination of the officer's knowledge of the prevalence of drugs and weapons in the area, the propensity of drug dealers to have weapons, and the other evidence summarized above justifying defendant's detention for selling drugs.
Defendant contends the pat-search was invalid because it was merely routine. He relies on Panighetti's response to the following cross-examination. "Would you be likely to pat search a person you believe to be engaged in a drug transaction in the high narcotics and high crime area?" "I would like to pat search him." We do not understand this response to be Panighetti's complete rationale for the pat-search. He simply gave a hypothetical answer to a hypothetical question. He also elaborated in other testimony about his above stated reasons for pat-searching defendant. Cases prohibiting routine pat-searches are distinguishable. (E.g., Santos v. Superior Court (1984) 154 Cal. App.3d 1178, 1185 [202 Cal. Rptr. 6].)
Defendant separately challenges Officer Panighetti's action in widening and looking into defendant's pocket after the pat-search revealed a hard, rectangular object. When a police officer's frisk of a detainee reveals a hard object that might be a weapon, the officer is justified in removing the object into view. (People v. Brown (1989) 213 Cal. App.3d 187, 192 [261 Cal. Rptr. 612]; People v. Hill (1974) 12 Cal.3d 731, 746-747 [117 Cal. Rptr. 393, 528 P.2d 1], disapproved on another ground in People v. DeVaughn (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal. Rptr. 786, 558 P.2d 872].) Since Panighetti believed the hard object could be a knife, he was justified in removing the hard object from defendant's pocket, and he was also justified in simply *536 looking into defendant's pocket to determine whether the object was a weapon. The police are not required to grab blindly after a frisk reveals a possible weapon. A blind grab could risk injury either to the officer or the suspect.
Byrd v. Superior Court (1968) 268 Cal. App.2d 495 [73 Cal. Rptr. 880], and People v. Aviles (1971) 21 Cal. App.3d 230, 234 [98 Cal. Rptr. 316], cited by defendant, would be similar if Panighetti had simply looked into defendant's pocket without first feeling a hard object. But that is not what Panighetti did.

Was retrieval of the hide-a-key box from defendant's pocket justified?
(7a) Defendant contends that once Officer Panighetti saw that the hard object in defendant's pocket was a hide-a-key box, the officer could not remove it without probable cause to arrest defendant. Defendant further contends that Panighetti did not have probable cause to arrest him.
(8) As explained in People v. Valdez (1987) 196 Cal. App.3d 799 [242 Cal. Rptr. 142]: An "officer's entry into the individual's pocket can only be justified if the officer's sensorial perception, coupled with the other circumstances, was sufficient to establish probable cause to arrest the defendant for possession of narcotics before the entry into the pocket. That is, an officer can make an interior pocket search for contraband only as an incident to an arrest, not merely as part of a detention.... The probable cause may be furnished by the officer's actual tactile perception of narcotics during a pat-search for weapons [citation], or by the officer's identification of an item which, when coupled with other circumstances, creates a reasonable inference that the item is contraband [citation]." (Id. at p. 806, italics in original; cf. People v. Leib (1976) 16 Cal.3d 869, 876 [129 Cal. Rptr. 433, 548 P.2d 1105].)
A recent United State Supreme Court holding is similar. Minnesota v. Dickerson, supra, 508 U.S. ___, authorized the discovery of drug contraband by plain feel during a weapon pat-search. (Id. at p. ___ [124 L.Ed.2d at pp. 343-348].) Once an officer feels that a concealed object is not a weapon, however, the officer cannot continue to palpate the object without probable cause to search the suspect. "Here, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to `[t]he sole justification of the search ... the protection of the police officer and others nearby.'" (Id. at p. ___ [124 L.Ed.2d at p. 347].) Since the officer did not have probable cause to believe the object was a *537 drug without further touching, the further touching and subsequent seizure of the drug were unconstitutional. (Id. at p. ___, [124 L.Ed.2d at p. 348].)[1]
(7b) Thus far we have concluded that the officer had reasonable grounds to detain and pat-search defendant and look into his pocket due to his hand-to-hand exchange and his stashing conduct in an area known for drug activity and weapons, and an unrecognizable, hard, rectangular object in his pocket. The superior court reached the same conclusions. The superior court then concluded that the discovery of the hide-a-key box did not elevate the officer's knowledge to the level of probable cause to arrest defendant. We disagree.
(9) As this court stated in In re Brian A. (1985) 173 Cal. App.3d 1168, 1173 [219 Cal. Rptr. 361]: "Probable cause for arrest exists `when the facts known to the arresting officer "would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (... People v. Ingle (1960) 53 Cal.2d 407, 412....)' (People v. Harris (1975) 15 Cal.3d 384, 389 [124 Cal. Rptr. 536, 540 P.2d 632].)"
(10) As explained by People v. Nonnette (1990) 221 Cal. App.3d 659, 666 [271 Cal. Rptr. 329] (cert. den. 498 U.S. 1087 [112 L.Ed.2d 1051, 111 S.Ct. 964]): "Courts have held that certain containers are so distinctive in nature that an officer may, based on his [or her] experience with such containers in previous arrests, have probable cause to search or seize such a distinctive container in plain view. Examples of such containers are paper bindles (People v. Lilienthal (1978) 22 Cal.3d 891, 898-890 [150 Cal. Rptr. 910, 587 P.2d 706]; People v. Clayton (1970) 13 Cal. App.3d 335, 337-338 [91 Cal. Rptr. 494]) heroin balloons (People v. Lee (1987) 194 Cal. App.3d 975, 984 [240 Cal. Rptr. 32]), and brick-shaped packages smelling like marijuana. (People v. McKinnon (1972) 7 Cal.3d 899, 917 [103 Cal. Rptr. 897, 500 P.2d 1097].) However, where the container is a common one with legitimate purposes, its presence is not enough to establish probable cause. (Remers v. Superior Court[, supra,] 2 Cal.3d 659, 662-663 [tinfoil package]; People v. Holt (1989) 212 Cal. App.3d 1200, 1206-1207 [261 Cal. Rptr. 89] [foil-wrapped package]; People v. Valdez[, supra,] 196 Cal. App.3d 799, 806-807 [film canister].)"
People v. Nonnette further explained, "`... whether a common container constitutes a suspicious circumstance, capable of contributing to the totality *538 of circumstances necessary for probable cause, depends on the total factual context in which the container is observed, including the prior experience of the observing officer with containers of the sort at issue....'" (221 Cal. App.3d at p. 667.) "Since the presence of a single, legitimate container is not inherently suspicious, detailed testimony to establish the officer's reasonable basis for connecting this single container to criminal activity is required." (Id. at pp. 667-668.) In Nonnette, the officer saw not one baggy, but several baggies of the type he knew to be used to package drugs. He also saw four men ducking down in a car in an area known for high drug traffic. Altogether this constituted probable cause to justify issuance of a search warrant for the car. (Id. at pp. 668-669.)
(7c) Here Officer Panighetti testified that he had seen narcotics in a key case once before. This experience alone might not establish the likelihood that narcotics were in defendant's key box. In People v. Chapman (1990) 224 Cal. App.3d 253 [274 Cal. Rptr. 47], an officer's unspecified prior experience with similar containers failed to justify his assumption that a snuff case contained narcotics. (Id. at pp. 258-259.) However, here the nature of the container gained additional significance from defendant's prior conduct in removing something from the nearby truck, engaging in a hand exchange, and replacing something on or near the truck. A hide-a-key container is designed for concealing its contents by magnetic attachment to the body of a vehicle. Magnetic key cases are not the kind that people ordinarily carry in their pockets.
We conclude that probable cause to arrest defendant for possessing drugs arose from combining the discovery of the hide-a-key box in defendant's pocket with the other circumstances summarized above indicating that what defendant was exchanging and concealing was drugs. An officer with probable cause to arrest can search incident to the arrest before making the arrest. (Rawlings v. Kentucky (1980) 448 U.S. 98, 111 [65 L.Ed.2d 633, 645-646, 100 S.Ct. 2556]; People v. Adams (1985) 175 Cal. App.3d 855, 861 [221 Cal. Rptr. 298].) This court has previously determined that an officer with probable cause to arrest can also open any container found on the arrestee in the course of a full body search. (Cf. People v. Sanchez (1985) 174 Cal. App.3d 343, 348 [220 Cal. Rptr. 53]; accord People v. Dennis (1985) 172 Cal. App.3d 287, 290 [220 Cal. Rptr. 53]; People v. Brocks (1981) 124 Cal. App.3d 959, 962-964 [177 Cal. Rptr. 730].) Officer Panighetti was entitled to seize and open the hide-a-key box in defendant's pocket incident to defendant's arrest for possession of drugs.
It is irrelevant whether Panighetti believed he had probable cause. Panighetti originally testified, "it was pretty close to having enough probable *539 cause to arrest him. But then I asked him what it was, and he couldn't answer me because of the language barrier." Panighetti later testified that upon seeing the key container he felt he had enough to arrest defendant. This court reviews the objective reasonableness of the facts known to the officer, not the officer's legal opinion about those facts. (Cf. People v. Gonzales (1989) 216 Cal. App.3d 1185, 1190 [265 Cal. Rptr. 507]; People v. Adams, supra, 175 Cal. App.3d at pp. 862-863.)
(11) Defendant contends the People are unable to rely on probable cause to seize the key box because they raised this theory too late. According to defendant it was first raised in argument at the end of the superior court hearing. Since the superior court's ruling depended on the nonexistence of probable cause, this theory is subject to review on appeal. Defendant cites no case precluding appellate consideration of a theory actually adopted by a trial court because the theory was raised too late in the trial court.
The danger in late introduction of a new theory is that the defendant may be prevented from developing relevant facts during examination. (People v. Superior Court (1972) 7 Cal.3d 186, 198-199 [101 Cal. Rptr. 837, 496 P.2d 1205].) Here defendant was able to cross-examine Officer Panighetti for a day during the preliminary hearing and for two days during the superior court hearing. His reasons for seizing the key box were thoroughly explored. The People did not raise this theory too late for appellate consideration.
In light of our conclusion that Officer Panighetti had probable cause to arrest defendant for possessing drugs and to seize and open the hide-a-key box in defendant's pocket, we do not discuss whether the officers opened the key box with defendant's voluntary consent.

Disposition
The order of dismissal is reversed.
Cottle, P.J., and Wunderlich, J., concurred.
Respondent's petition for review by the Supreme Court was denied September 29, 1993.
NOTES
[1] In light of this decision, at oral argument the People withdrew their alternate contention that the search could be justified under a lesser standard of reasonable suspicion as in People v. Clark (1989) 212 Cal. App.3d 1233, 1238-1239 [261 Cal. Rptr. 181].