Filed 4/28/22  P. v. Hickerson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JASON CARMICHAEL HICKERSON, JR.,<br><br>　　　Defendant and Appellant. | A162243<br><br>(Solano County<br>Super. Ct. No. VCR234907) |

Following the denial of his motion to suppress, defendant, Jason Carmichael Hickerson, Jr.,[1] pleaded no contest to possession of a firearm by a felon.  He raises a single issue on appeal—that his motion to suppress should have been granted because, at the time the police officers searched the car he was driving, they had no reason to believe he had lied about his identity and therefore had no basis to search for evidence of such.  We conclude that, regardless of whether the search was lawful, the inevitable discovery doctrine applies because, while still at the scene, defendant admitted he initially provided a false name, at which point the officers could have, and would have, searched the car for evidence of that misdemeanor offense.  We therefore affirm.

---

[1] The record indicates Hickerson had several AKAs, including Jason Upton Hickerson.

1

In August 2019, Solano County Sheriff's Deputy Armando Sanchez and his partner who was driving, Deputy Jesse Irvin, initiated a traffic stop on a vehicle that did not have a front license plate—a violation of Vehicle Code section 5200, subdivision (a).  After pulling the vehicle over, the officers contacted the two occupants.  Defendant was the driver.

When asked for his driver's license, defendant said he did not have one and told the officers his name was "Leon Hickerson" and provided a date of birth.  The officers then communicated with their dispatch center, which ran the name.  The dispatch center informed them there was an active arrest warrant for Leon Hickerson.  The officers also requested a "Cal. Photo" from dispatch, which dispatch provided and which appeared to be of defendant.

At that point another officer, Deputy Robertson, arrived.

The officers asked both occupants to exit the vehicle.  Defendant was handcuffed, placed under arrest, and placed in the back of Deputy Sanchez's patrol car.  Deputy Sanchez told defendant he was being arrested on the outstanding warrant.  The passenger was placed in the back of Deputy Robertson's car.

After the arrests, the officers asked defendant for consent to search the vehicle, which he refused.   Nevertheless, within a "couple minutes" of defendant's arrest, Deputy Sanchez and his partner searched the common areas of the vehicle for identification.  Deputy Robertson found a U.S. Passport and a loaded firearm in the center console.  The name on the passport was "Jason Upton Hickerson."

After the search, Deputy Sanchez spoke to defendant "a second time." At that point, defendant told Deputy Sanchez "his actual name."[2]

---

[2] Deputy Sanchez testified in pertinent part:

Defendant was charged with one count of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)), and one count of possession of ammunition by a felon. (*Id.*, § 30305, subd. (a)(1).)

Deputy Sanchez was the sole witness at the hearing on defendant's motion to suppress. In addition to testifying to the facts recounted above, he also testified that when he arrests a suspect on a warrant confirmed through dispatch, he always attempts to confirm the identity of the suspect through a fingerprint scanner if available, a Cal. Photo, or through questioning the suspect. When he saw the Cal. Photo supplied here, Deputy Sanchez "was convinced based on the photo that it was Mr. Hickerson. They looked very similar to the photo, and I was convinced that it was him." Deputy Sanchez further testified that when he determines a driver has provided a false name, the vehicle is generally searched for evidence of the correct identity.

---

"[Prosecutor] Q. During that conversation when defendant ultimately provided you with his real name, was that prior to the search of the vehicle or after the search of the vehicle locating the gun?
"A. That was after. [¶] . . . [¶]
"Q. . . .When you arrested the defendant after dispatch told you Leon Hickerson had a warrant, did you tell him he was arrested at that point?
"A. Yes.
"Q. And that was based on the warrant?
"A. Yes.
"Q. And at that point the defendant did not tell you his true name?
"A. That's correct.
"Q. And then you searched the vehicle?
"A. That's correct.
"Q. Then, did you contact the defendant a second time?
"A. I did.
"Q. And is that when you learned that the defendant's true name was not Leon Hickerson?
"A. That's correct."

Defendant argued his motion to suppress should be granted because, at the time of his arrest and the subsequent search, the officers had no reason to believe he had falsely identified himself and therefore no grounds to search the car following his arrest. The prosecution's principal argument was that regardless of whether the search was lawful at the time it occurred, the inevitable discovery doctrine applied. The trial court denied the motion.

Defendant then pleaded no contest to possession of a firearm by a felon, and the court granted the People's motion to dismiss the second count (felon in possession of ammunition) and sentenced defendant to two years' probation with credit for time served.

## DISCUSSION

"The applicable standards under which we review a trial court's order refusing to suppress evidence are well established. In reviewing the denial of a suppression motion, we consider the record in the light most favorable to the disposition and defer to the court's factual findings if supported by substantial evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 979. . . .) Any conflicts in the evidence are resolved in favor of the court's order. (*People v. Limon* (1993) 17 Cal.App.4th 524, 529. . . .) The court's ruling on whether the relevant law was violated is a mixed question of law and fact subject to de novo review. (*People v. Hoyos* (2007) 41 Cal.4th 872, 891. . . .)[3] Thus, we exercise independent judgment in determining the legality of a search and seizure. (*Tully*, at p. 979.)" (*People v. Mathews* (2018) 21 Cal.App.5th 130, 137 (*Mathews*).)

---

[3] Overruled on another ground as stated in *People v. McKinnon* (2011) 52 Cal.4th 610, 637-643 and *People v. Black* (2014) 58 Cal.4th 912, 919–920.

We need not, and do not, decide whether the warrantless search of the vehicle immediately following defendant's arrest was lawful, as we agree with the Attorney General that the inevitable discovery doctrine applies.[4]

"[E]vidence that has been illegally obtained need not always be suppressed." (*Nix v. Williams* (1984) 467 U.S. 431, 441 (*Nix*).) " 'The inevitable discovery doctrine acts as an exception to the exclusionary rule, and permits the admission of otherwise excluded evidence "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." ' (*People v. Hughston* (2008) 168 Cal.App.4th 1062, 1071 . . . [(*Hughston*)]; see [*People v.*] *Robles* [(2000)] 23 Cal.4th [789,] 800 [(*Robles*)].) 'The purpose of the inevitable discovery rule is to prevent the setting aside of convictions that would have been obtained without police misconduct.' (*Robles*, at p. 800.) 'Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place. However, if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the

---

[4] We note that at the time the search was made, *In re Arturo D.* (2002) 27 Cal.4th 60, 79, was the controlling law and allowed, under certain circumstances, warrantless vehicle searches for regulatory and identifying documentation in locations where such documentation might reasonably be found. By the time of the motion to suppress, the high court had decided *People v. Lopez* (2019) 8 Cal.5th 353, 381 (*Lopez*), overruling *Arturo* and holding a vehicle offense, alone, is not a sufficient basis for a warrantless search of a car for evidence of identity. The high court observed at the end of its opinion that the officer had raised a "good faith" defense based on the law at the time of the search, and the court remanded the case for further proceedings, presumably on that issue. (*Id.* at p. 381.)

5

fairness of the trial proceedings. In that situation, the State has gained no advantage at trial and the defendant has suffered no prejudice. Indeed, suppression of the evidence would operate to undermine the adversary system by putting the State in a worse position than it would have occupied without any police misconduct.' (*Nix* [, *supra*,] 467 U.S. [at p.] 447. . . .) [¶] 'The prosecution bears the burden of proving by a preponderance of the evidence that evidence otherwise unlawfully obtained would have been inevitably discovered.' (*People v. Superior Court* (*Walker*) (2006) 143 Cal.App.4th 1183, 1217 . . . (*Walker*).) 'The showing must be based not on speculation but on "demonstrated historical facts capable of ready verification or impeachment." ' *(People v. Hughston*, [*supra*,] at p. 1072.) However, in assessing whether evidence would inevitably have been discovered, 'this "court does not leave its common sense at the door." ' (*Walker*, at p. 1216.)" (*People v. Cervantes* (2017) 11 Cal.App.5th 860, 872 (*Cervantes*), italics & fn. omitted.)

Here, defendant told the officers he had no driver's license and provided a false name, and he was then arrested on the basis of the warrant associated with that name and placed in the back of Deputy Sanchez's patrol car. Deputy Sanchez did not, at that time, have any doubt as to defendant's identity, given the Cal. Photo. Despite defendant's refusal to give consent, the officers searched the car and found the passport and the gun.

Deputy Sanchez then "contact[ed]" defendant a "second time," at which point defendant told Deputy Sanchez his true name. The record contains no other details about this second contact. Thus, there is no evidence defendant, who had been placed in the back of Deputy Sanchez's patrol car, was aware of the search at the time it was being conducted. Nor is there any evidence Deputy Sanchez told defendant the officers had found the passport, or that he

6

expressed some doubt about defendant's identity, before defendant told Deputy Sanchez he had given the officer a false identity. In short, there is no evidence defendant told Deputy Sanchez his true name *because* of the search.

At oral argument, defense counsel maintained there is other evidence in the record, indeed, significant evidence, about Deputy Sanchez's second contact with defendant. According to counsel, this evidence establishes that Deputy Sanchez held the passport up to defendant's face *before* defendant told Deputy Sanchez he was, in fact, Jason Hickerson, and not his brother, Leon.

The testimony of Deputy Sanchez that counsel quoted at oral argument appears in the following colloquy on further redirect and further recross examination (we have italicized the testimony quoted by counsel):

> "[Prosecutor] Q. When you looked at the photograph provided via Cal. Photo from your dispatcher prior to the search did you determine at the time that the subject in the photograph was not defendant?
> "A. No. When I saw the photo I was convinced based on the photo that it was Mr. Hickerson. They looked very similar to the photo, and I was convinced that it was him.
> "Q. Did you later–okay. So at the time of the search you were convinced that the defendant had given you essentially his true name because you looked at a photograph and you thought that was the correct person?
> "A. Yes.
> "Q. Okay. Then did you later look at a subsequent Cal. Photo?
> "A. I don't recall looking at a subsequent photo because *I had the passport, which I used to confirm the photo and passport with his actual person.*
> "[Prosecutor]: Those are my questions.
> "[The Court]: Anything else?
> "[Defense Counsel]: Yes. [¶] . . . [¶]
> "[Defense Counsel] Q. Deputy, prior to the search of the vehicle you were convinced that the Cal. Photo you had been provided matched the defendant in this case, the driver of the vehicle, the same person that had a warrant for their arrest; is that right?
> "A. Yes.

7

"[Defense Counsel]: Nothing further.

"[The Court]: Anything else?

"[Defense Counsel]: No further questions."

We do not agree that this colloquy, and, specifically, the testimony defense counsel quoted at oral argument, establishes what defense counsel claimed it does. In context, it is apparent that this exchange concerned whether or not Deputy Sanchez believed, at the time of the arrest and the subsequent search, that defendant was who he initially claimed to be—his brother, Leon. This undisputed fact was the principal reason why defendant claimed in the trial court that the search was unlawful. As we have noted, by the time of the suppression hearing, our Supreme Court had decided *Lopez* and overturned *In re Arturo D.* However, in *Lopez,* the high court indicated that even in a traffic stop situation, a limited search for evidence of identification is still permissible where the officer reasonably believes he has been given false identifying information. (*Lopez, supra*, 8 Cal.5th at p. 372.)

Thus, defense counsel argued in the trial court:

> "[T]he People have not presented as a justification for the search, in this case there was no reason to search the vehicle. The driver, according to the deputy, everyone was convinced that the Cal. Photo he received was the driver of the vehicle. And the deputy testified that the way that he identified whether or not someone is the subject of an arrest warrant is by either a fingerprint scanner or the use of Cal. Photo. In this case he used Cal. Photo. He identified the person, the driver of the vehicle as the person who was the subject of the arrest warrant. And that's the end. [¶] . . . So the facts of this case where the deputy is convinced that this gentleman, the defendant, is the subject of the arrest warrant. And he's already arrested. There is no cause to get back in the vehicle other than general rummaging. That's what we have here."

Moreover, the one line of Detective Sanchez's testimony that defense counsel focused on at oral argument neither says, nor establishes, that Deputy Sanchez displayed the passport to defendant as he approached a

8

second time or held the passport up alongside defendant's face *before* defendant told Deputy Sanchez he was, in fact, Jason Hickerson, not his brother, Leon Hickerson. What this line of testimony says is that Deputy Sanchez did not ask for a second Cal. Photo because he had found the passport, which he used to "confirm the photo and passport with his actual person." This says nothing about *how* or *when* Deputy Sanchez confirmed the photo and passport "with [defendant's] actual person."

At oral argument, counsel insisted the only conclusion one can reach from Deputy Sanchez's testimony is that Sanchez held the passport up to defendant's face and that is what precipitated defendant's telling Sanchez he had provided the officer with the name of his brother. We do not agree. For one thing, only minutes before, Deputy Sanchez had arrested defendant and walked him over to the squad car and placed him in the backseat. Thus, Deputy Sanchez was fully aware of what defendant looked like by the time the officers found the passport, and Sanchez may have meant that his personal observation of defendant was his point of reference. Or, Deputy Sanchez may have held the passport up, but *after* defendant announced he was, in fact, Jason, not his brother, Leon. The salient point is that the record does *not* establish what defense counsel claims—that defendant admitted he gave the officers a false identity only because, and only after, Deputy Sanchez displayed the passport.[5]

Indeed, it is telling that defense counsel in the trial court never made the argument counsel made at oral argument. Rather, trial counsel's response to the prosecution's reliance on the inevitable discovery doctrine

---

[5] As we have recited, defense counsel had every opportunity in the trial court to cross-examine Deputy Sanchez, but asked no questions as to how or when, or even if, Sanchez displayed the passport to defendant.

was that this theory does not apply when there has been a Fourth Amendment violation, citing *Hughston, supra*, 168 Cal.App.4th 1062.

Counsel argued:

"And now it's attempted to be justified in retrospect as inevitable discovery, which I'd like to address for the record specifically the case of People vs. Hughston, H-u-g-h-s-t-o-n, where the First District Court of Appeal—and this is found at 166 Cal.App.4th 1062. The Court of Appeal indicates that inevitable discovery is not to be used. Let me get the language here. The First District Court of Appeal states that 'a violation of the Fourth Amendment may not be disregarded simply because the police, had they thought about the situation more carefully, could have come up with a lawful means of achieving their desire to be solved [*sic*].' And that is found at page 899 of the Hughston decision. I think that's what we have here. We have all these different means trying to justify, but it's clearly unlawful."

*Hughston* bears no similarity to the instant case. In that case, the defendant traveled to Mendocino County in a Hummer vehicle that was loaded with drugs which defendant intended to sell. On arriving at a campground, defendant set up shop. After undercover federal agents observed the defendant engage in several transactions, they searched his backpack and the Hummer. The pivotal fact with respect to the Hummer was that the defendant had constructed "a tentlike structure that surrounded the Hummer." (*Hughston, supra,* 168 Cal.App.4th at pp. 1064–1065, 1068–1069 [the tarp and frame structure "completely enclosed a 10-by-30-foot area that included within it tents, an eating area, and the Hummer"].) The appellate court upheld the search of the backpack but reversed as to the search of the Hummer. (*Id.* at pp. 1065, 1069–1071.) The court concluded the tarp and frame structure was the equivalent of a large camping tent and that persons erecting such structures on national forest lands have a reasonable expectation of privacy in their temporary abode. (*Id.* at pp. 1069–

10

1071.)  Accordingly, the agents needed a warrant to enter and search the premises, which included, in this case, the Hummer.  (*Id.* at p. 1071.)

The appellate court did not hold the inevitable discovery doctrine does not apply to searches that otherwise violate the Fourth Amendment.  Rather, what the court pointed out is that failure to obtain a warrant for entry into an abode, such as the tent structure, cannot be excused merely because there was probable cause to enter and search at the time, and the officers therefore would have obtained a warrant had they sought one.  (*Hughston, supra*, 168 Cal.Ap.4th at p. 1072.)  Indeed, applying the inevitable discovery doctrine in such circumstances would eviscerate the warrant requirement.  (*Ibid.*)

That, however, is not the situation in the case at hand.  Following the discovery that defendant had provided a false name, the officers had probable cause to arrest him for false representation of identity and could have, and according to Deputy Sanchez would have pursuant to standard practice, searched the car for evidence of that offense.  (Pen. Code, § 148.9; *Arizona v. Gant* (2009) 556 U.S. 332, 346 ["Under our view," case law "permit[s] an officer to conduct a vehicle search when . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest."].)  Indeed, as our high court recognized in *Lopez*, "where an officer believes he or she has been given false identification information, other exceptions may come into play. At that point, the officer is no longer solely concerned with issuing an enforceable traffic citation; lying to a police officer about one's identity is a criminal offense punishable by imprisonment in county jail.  (Pen. Code, § 148.9; Veh. Code, §§ 31, 40000.5.)  Under the automobile exception to the warrant requirement, an officer may search a vehicle if the officer has probable cause

11

to believe that evidence of a crime will be found inside." (*Lopez, supra,* 8 Cal.5th at p. 372.)

Such a search would have uncovered the firearm. Thus, the firearm " 'inevitably would have been discovered by lawful means.' " (People v. *Fayed* (2020) 9 Cal.5th 147, 184, quoting People v. *Coffman and Marlow* (2004) 34 Cal.4th 1, 62; see, e.g., *Nix, supra,* 467 U.S. at p. 444 [even though police had defendant lead them to the victim's body without defense counsel being present and had seized evidence from the body, ongoing volunteer searches for the body would have inevitably uncovered the evidence]; *Cervantes, supra,* 11 Cal.App.5th at pp. 871–874 [even assuming officer should have ceased looking through bags in the back seat of a vehicle stopped for a vehicle violation, once officer learned passenger was on felony probation, was subject to a full search clause, and had given the officer a false identity, the officer would have been entitled to search, and would have searched, all areas within reach of the passenger and would have found drugs in the console, which, in turn, would have permitted further search of the vehicle and, inevitably, have led to discovery of the drugs in the bags].)

### DISPOSITION

The judgement is affirmed.

_____
Banke, J.

We concur:

_____
Margulies, P.J.


_____
East, J.*


*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


A162243, People v. Hickerson