Filed 6/28/23  P. v. Thomas CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEVON THOMAS,<br><br>    Defendant and Appellant. | 2d Crim. No. B322270<br>(Super. Ct. No. BA498943)<br>(Los Angeles County) |

Following the trial court's denial of his motion to suppress evidence, Devon Thomas pled no contest to possession of a firearm by a felon in violation of Penal Code section 29800, subdivision (a)(1).  The court suspended sentence and placed Thomas on formal probation for two years.  He contends evidence of the firearm should have been suppressed because the police officers lacked reasonable suspicion to detain him.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Officer Nehemiah Choe of the Los Angeles Police Department and his partner were on patrol near Van Ness and Florence Avenue shortly after midnight on September 6, 2021. The officers had been conducting extra patrols in the area due to recent violent crimes and gang activity.

While stopped at a traffic light, Officer Choe saw Thomas walking on the street about 100 feet away. After spotting the patrol car, Thomas grabbed an "unknown bulge" at the front of his waistband and ran across Florence Avenue, toward an illegal marijuana dispensary shop. Thomas crossed all lanes of traffic, while holding his waistband and looking in the officers' direction. He did not use the nearest marked crosswalk, which was approximately half a block away.

Thomas stopped running after he crossed the street and began walking toward the marijuana dispensary, where gang members often congregate. The officers detained Thomas for jaywalking before he entered the dispensary.

Officer Choe suspected that Thomas, who was wearing sweatpants, had been holding the front of his waistband to conceal a firearm. Based on his training and experience, Choe was aware that firearms are often illegally concealed in waistbands, particularly after dark. He had encountered firearms in waistbands approximately 50 times in his career.

Once Thomas was physically detained, Officer Choe could see a bulge in his front waistband area. When Thomas reached for his waistband and pockets a second time, the officers

---

[1] The factual background is based on evidence presented at both the preliminary hearing and the hearing on Thomas's motion to suppress evidence.

2

conducted a pat-down search.  Choe removed a loaded 9-millimeter handgun from Thomas's waistband.

On cross-examination, Officer Choe admitted the bulge in Thomas's pants could not be seen on his partner's body-worn camera video (Defense Exh. A).  That video showed Thomas holding money in one hand as he tried to take off his backpack with the other. But Choe was able to see the bulge in the video from his own body-worn camera (People's Exh. 2).

The trial court found that because Thomas had crossed the street at or near an unmarked crosswalk, he did not commit the offense of jaywalking.[2]  It nonetheless denied Thomas's motion to suppress, finding the officers had reasonable suspicion to detain Thomas and to conduct the pat-down search that revealed the handgun.

DISCUSSION

*Standard of Review*

"On appeal from a denial of a motion to suppress evidence on Fourth Amendment grounds we review the historical facts as determined by the trial court under the familiar substantial evidence standard of review.  Once the historical facts underlying the motion have been determined, we review those facts and apply the de novo standard of review in determining their consequences.  Although we give deference to the trial court's factual determinations, we independently decide the legal effect of such determinations.  [Citation.]" (*People v. Esayian* (2003) 112 Cal.App.4th 1031, 1038; *People v. Mateljan* (2005) 129 Cal.App.4th 367, 373.)

---

[2] Effective January 1, 2023, jaywalking is no longer a citable offense unless the person crosses the street dangerously. (Assem. Bill No. 2147, 2021-2022 Reg. Sess.)

*The Trial Court Did Not Err By Denying*
*the Motion to Suppress*

"[P]olice can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." (*United States v. Sokolow* (1989) 490 U.S. 1, 7 [104 L.Ed.2d 1]; see *Terry v. Ohio* (1968) 392 U.S. 1, 30 [20 L.Ed.2d 889] (*Terry*); *People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).) "'The "reasonable suspicion" necessary to justify such a stop "is dependent upon both the content of information possessed by police and its degree of reliability[,]" [citation] . . . . tak[ing] into account "the totality of the circumstances . . . ."'" (*People v. Brown* (2015) 61 Cal.4th 968, 981.)

If, upon detaining a person based on reasonable suspicion, the officer "is justified in believing that the individual . . . he [or she] is investigating at close range is armed and presently dangerous to the officer or to others" (*Terry*, *supra*, 392 U.S. at p. 24), the officer may conduct a search "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." (*Id.* at p. 26) Thomas concedes that if Officer Choe and his partner had reasonable suspicion to detain him, their *Terry* pat-down search was legally proper.

*Reasonable Suspicion Supported the Detention*

Thomas contends his detention was the pretextual stop of a young black man who, in a high crime area late at night, ran across the street after seeing the officers' patrol car. He claims he "was stopped merely because he fit the profile of the people the extra [police] patrols were targeting."

4

The trial court ruled otherwise. It correctly noted that once Officer Choe's partner exited the patrol car, shined a light on Thomas and instructed him to "'stand over here'" and "'face the wall,'" "there had to be reasonable suspicion to detain . . . Thomas. And the only reason supporting that detention would necessarily have to be Officer Choe's observation of [Thomas] as occurred before that point." That observation included Thomas (1) "look[ing] in [the officers'] direction as they drove in their patrol car down Florence Avenue," (2) "either [running] or quickly walk[ing] across Florence while holding his front waistband, at that time of night, when . . . it's easier to conceal a firearm," and (3) "head[ing] apparently in the direction of an illegal dispensary, where . . . persons often possess weapons."

The trial court found that "these facts, in addition to Officer Choe's testimony that the area had a recent upsurge in violent crimes, including robberies and shootings, gave the officers reasonable suspicion to detain [Thomas] to investigate a possible possession of a weapon or a firearm."

We conclude substantial evidence supports these facts, which, when considered in light of the totality of the circumstances, reasonably warranted the investigative detention. (*Terry*, *supra*, 392 U.S. at p. 21.) Although a person's presence in a high-crime area is not by itself enough to create a reasonable suspicion the person is involved in criminal activity, the "setting is a factor that can lend meaning to the person's behavior. [Citations.]" (*People v. Limon* (1993) 17 Cal.App.4th 524, 532.) The same is true of the "time of night" and the person's "evasive conduct" or "sudden flight" from police. (*Souza*, *supra*, 9 Cal.4th at pp. 241-242.)

Thomas claims he "was wearing baggy sweatpants and a backpack at the time . . . , which could more than explain why he

5

was holding his waistband while he ran – to keep his pants from falling down." Although the officers' bodycam videos confirm that Thomas's sweatpants actually were "form fitting", "[t]he possibility of an innocent explanation does not deprive [an] officer of the capacity to entertain a reasonable suspicion of criminal conduct." (*In re Tony C.* (1978) 21 Cal.3d 888, 894 (*Tony C.*).) "[E]xperienced police officers develop an ability to perceive the unusual and suspicious, and [courts] recognize the right and duty of officers to make reasonable investigation of such activities." (*People v. Aldridge* (1984) 35 Cal.3d 473, 477.)

Here, Officer Choe testified, based on his training and experience, that firearms are often illegally concealed in waistbands, particularly after dark, and that he had encountered such firearms approximately 50 times in his career. Even if there was a possible innocent explanation for Thomas's actions, the principal function of Choe's "investigation [was] to resolve that very ambiguity and establish whether the activity is in fact legal or illegal . . . ." (*Tony C.*, *supra*, 21 Cal.3d at p. 894.) Thomas has not demonstrated error.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, J., Acting P.J.          BALTODANO, J.

6

Ray G. Jurado, Judge

Superior Court County of Los Angeles

_____

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.