Filed 3/13/15  P. v. Melvin CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>ELIZEBETH TRACY MELVIN,<br><br>　　　Defendant and Appellant. | F067516<br><br>(Super. Ct. No. BF142195A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Tara K. Hoveland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, for Plaintiff and Respondent.

-ooOoo-

**SEE DISSENTING OPINION**

# PROCEDURAL SUMMARY

Appellant Elizebeth Tracy Melvin was charged in an information filed on October 9, 2012, with felony possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a), count 1) and misdemeanor trespass in violation of Bakersfield Municipal Code section 8.80.060, subdivision (F).[1]

At the beginning of a jury trial, the trial court denied appellant's motion to suppress evidence pursuant to Penal Code section 1538.5.[2] On April 20, 2013, the jury found appellant guilty of both counts. On June 20, 2013, the trial court suspended imposition of appellant's sentence, placed her on three years of probation on count 1, and ordered appellant to complete 500 hours of community service on count 2 to be served concurrently with count 1.

Appellant contends the trial court erred in denying her suppression motion. We disagree and affirm the judgment.

# FACTS

On May 10, 2012, at 6:00 p.m., Bakersfield Police Officer Tiffany Beltran was on patrol with her partner, Officer Ryan Vaughn, at Oregon and Robinson Streets, an area extremely high in narcotics and gang activity. Beltran was trained in narcotics cases and received instruction on how to identify narcotics and narcotics paraphernalia. Beltran

---

[1] On March 10, 2014, this court granted the People's request to take judicial notice of a certified copy of Bakersfield Municipal Code section 8.80.060 (section 8.80.060). Subdivision (F) of section 8.80.060 states:

"Compliance with Order to Vacate. Where a property has been posted and ordered to be vacated as set forth in this section, notice of such vacation shall be provided to the property owner. No person shall remain in or enter any building which has been posted, except that entry may be made to repair, demolish or remove such building where any required permit to do so has been acquired. No person shall remove or deface any such notice after it is posted until the required repairs, demolition or removal have been completed and a certificate of occupancy issued. Any person violating this subsection shall be guilty of a misdemeanor. [Citations.]"

[2] The trial court also denied appellant's motion to suppress her postarrest statements to officers based on alleged improper advisements pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

2.

had made at least 50 arrests in narcotics cases.  Beltran also worked in an undercover capacity with narcotics detectives in the police department.

The corner residence on Oregon and Robison Streets was 1130 Oregon Street. Beltran had investigated 1130 Oregon Street approximately three times during the previous year.  Beltran investigated an earlier trespass unrelated to the instant action and made contact with subjects who were inside one of the units using narcotics.  Beltran twice came across appellant at the property.

The property had three buildings.  There was a house on the far south side of the property, a detached garage about 15 to 20 feet from the house, and another small building that Beltran thought was either a garage or an additional residence.[3]  There was a chainlink fence on the property and a five foot tall wooden fence that connected the main house to the garage.  The gates to the wooden fence and the chainlink fence were open.  A door to the garage was also open.

On direct examination, Beltran testified that the residence was posted with red or orange signs on the doors.  On cross-examination, Beltran was uncertain how many signs were posted on the main residence.  When asked on direct examination about the condition of the "buildings or units," Beltran responded that "there were either orange or red signs posted on the doors indicating that the building was— [¶] … [¶] condemned." Beltran explained that all of the doors were locked and the windows were boarded up.

Officer Vaughn went to observe the posted signs and reported back to Beltran what the signs said.  Beltran routinely saw these signs on vacant properties that had been condemned by the city's code enforcement division.  Vaughn reported that the signs on the property indicated the property was condemned, it was uninhabitable, and that anyone entering the property would be arrested for trespassing.

---

**3**     Beltran explained that the space between the main house and the garage was 10 feet wide and 15 to 20 feet long.

Section 8.80.060, subdivision (E) mandated that a posted sign be in the following form:

"DO NOT ENTER

"UNSAFE TO OCCUPY

"It is a misdemeanor to occupy this building or to remove or deface this notice.

"CITY OF BAKERSFIELD

"CODE ENFORCEMENT DIVISION"

As Beltran approached the property with Vaughn in their patrol car, she saw an individual standing inside the chainlink fence. From an area just outside and to the east of the fence, through an open door to the garage, Beltran was standing 20 to 25 feet away and saw what looked like movement inside the garage. As Beltran approached the open door, she saw appellant lying face down on the floor with another woman standing above her. Beltran ordered the women to exit the building and they both complied. At that time, Beltran was standing in the yard of the property.

Beltran, unaware as to whether appellant had any weapons, immediately started a patdown search of appellant. Beltran had appellant place her hands behind her head and asked whether appellant possessed anything that could poke or hurt her. Appellant said she did not. Beltran asked appellant if she had anything in her bra. Appellant replied that she had some money in her bra. Beltran conducted a patdown search from behind appellant.

As Beltran felt along appellant's tank top and bra area, she felt something sticking out from the upper left portion of appellant's tank top. Beltran maneuvered around appellant's left side and saw rolled up currency sticking out of the strap of appellant's top. In Beltran's training and experience, she was familiar with narcotics being placed inside rolled up currency and removed the currency to see if anything was hidden inside. As Beltran did so, something fell to the ground. Beltran saw a clear plastic baggie on the

4.

ground containing an off-white substance.  Beltran believed the off-white substance was methamphetamine.

Beltran handcuffed and arrested appellant for possession of methamphetamine and trespass.  Beltran read appellant her *Miranda* rights.  Appellant said she understood her rights and told Beltran she was inside the property because her boyfriend was working on the property for the bank.  When Beltran showed appellant the baggie of off-white substance, appellant said it was not hers and thought it may have been in a bill she was given while getting change from someone.  Appellant told Beltran the substance in the baggie looked like methamphetamine.  Appellant said the last time she ingested methamphetamine was about a week earlier.

## DISCUSSION

Appellant contends the officers did not have probable cause to arrest, search, or detain her and the trial court erred in denying the suppression motion.  The People argue that the officers had probable cause to search appellant incident to a lawful arrest for trespass in violation of section 8.80.060.  Alternatively, the People contend the officers had reasonable suspicion to detain appellant and conduct a patdown search.

### *Probable Cause to Arrest*

A warrantless arrest is reasonable under the Fourth Amendment whenever an officer has probable cause to believe the person arrested has committed a criminal offense.  (*People v. Kraft* (2000) 23 Cal.4th 978. 1037.)  Probable cause exists when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the arrested person is guilty of a crime.  Probable cause must be viewed under the totality of the circumstances, not on any isolated event.  Arrests are unlawful if they are made without probable cause in the hope that something might turn up.  (*In re J.G.* (2010) 188 Cal.App.4th 1501, 1506 (*J.G.*).)  A peace officer has probable cause to arrest a suspect when a public offense is committed in

the officer's presence.  (Pen. Code, § 836, subd. (a)(1); *People v. Superior Court* (1971) 15 Cal.App.3d 146, 152; *People v. Brice* (1965) 234 Cal.App.2d 258, 265.)

One specifically established exception to the Fourth Amendment requirement for a warrant is a search incident to a lawful arrest.  (*People v. Diaz* (2011) 51 Cal.4th 84, 90.) Regardless of the offense for which the arrest is made, an officer may always thoroughly search a defendant incident to an arrest when the defendant is taken into lawful custody. (*United States v. Robinson* (1973) 414 U.S. 218, 234–236; *Gustafson v. Florida* (1973) 414 U.S. 260, 263–266; *People v. Monroe* (1993) 12 Cal.App.4th 1174, 1195.)  Even a minor criminal offense punishable by a fine, such as a traffic offense, can support a custodial arrest and a search incident to that arrest.  (*Atwater v. Lago Vista* (2001) 532 U.S. 318, 323, 339–345; *People v. McKay* (2002) 27 Cal.4th 601, 606–619.)

In ruling on a motion to suppress evidence, appellate courts defer to the trial court's express and implied factual findings that are supported by substantial evidence. The reviewing court then exercises its independent judgment in determining whether those facts meet the constitutional standard of reasonableness.  (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)  When the appellate court exercises its independent judgment as to the objective portion of this test, it must review the evidence in the light most favorable to the lower court's ruling (*People v. Williams* (1988) 45 Cal.3d 1268. 1301 (*Williams*); *People v. Renteria* (1992) 2 Cal.App.4th 440, 442) (*Renteria*), and resolve express or implied factual conflicts in favor of the magistrate's, or in this case, the trial court's ruling (*People v. Wilmshurst* (2007) 146 Cal.App.4th 621, 625).

The People argue that appellant was inside property posted with signs warning her that entry violated the trespass ordinance and to do so was a misdemeanor.  Appellant replies there is no evidence that the detached garage was posted with a warning sign, section 8.80.060 only covers buildings that are posted with the proper signage, and Beltran could not lawfully arrest her for being present in the detached garage.  After carefully reviewing Beltran's testimony at the suppression hearing, we find that her

testimony can reasonably be interpreted to support the conclusion that there were warning signs on all of the buildings on the property.

During cross-examination, Beltran was uncertain how many *signs* were on the main residence. When Beltran was asked on direct examination about the condition of the "buildings or units," however, she replied that there were "orange or red *signs* posted on the doors indicating that the building was" condemned. (Italics added.)

Beltran testified that Officer Vaughn went to observe the posted condemnation signs and reported back to Beltran what the signs said. Beltran routinely saw these signs on vacant properties that had been condemned by the city's code enforcement division. Vaughn reported that the *signs* on the property indicated the property was condemned, it was uninhabitable, and that anyone entering the property would be arrested for trespassing.

Officer Beltran referred more than once in her testimony to *signs* being posted on the property, although she was only certain of a single sign on the main residence. We believe from this that it was reasonable for the trial court to conclude that there were multiple signs on the property. Furthermore, the trial court could infer from the presence of multiple signs that there was a condemnation on the detached garage as well as the main residence. Beltran's testimony is reasonably susceptible to a conclusion that all of the "buildings or units" had posted condemnation signs.

Beltran also referred on direct examination to the presence of locked doors, boarded up windows, and the presence of a chainlink fence on the property. Coupled with Beltran's initial description of multiple signs on the property, the trial court had evidence before it from which it could reasonably infer that the main residence, detached garage, and third structure were all condemned buildings. We therefore reject appellant's interpretation of the record that there is no evidence of a condemnation sign on the garage and she could not be arrested for trespass. Because Beltran witnessed appellant

7.

trespassing in violation of section 8.80.060, appellant was subject to an arrest for misdemeanor trespass and to a search incident to that lawful arrest.

*Reasonable Suspicion and Probable Cause*

Assuming arguendo that there was no evidence of a properly posted sign on the detached garage and appellant could not be arrested for misdemeanor trespass, we alternatively hold that appellant was subject to a temporary detention.

Temporary detentions for questioning or investigation may be justified by circumstances falling short of probable cause. In order to justify such a detention, the circumstances known or apparent to the officer must include specific and articulable facts causing him or her to suspect that (1) some activity relating to crime has taken place, is occurring, or about to occur, and (2) the person he or she intends to stop or detain is involved in that activity. The officer must not only subjectively entertain such suspicion, it must be objectively reasonable for him or her to do so. The facts must be such as would cause any reasonable police officer in a similar position, drawing on his or her training and experience, to suspect criminal activity and the same involvement by the suspect in question. (*J.G.*, *supra*, 188 Cal.App.4th at p. 1506, citing *People v. Loewen* (1983) 35 Cal.3d 117, 123.)

In ruling on a motion to suppress evidence, appellate courts defer to the trial court's express and implied factual findings that are supported by substantial evidence. The reviewing court then exercises its independent judgment in determining whether those facts meet the constitutional standard of reasonableness. (*People v. Glaser*, *supra*, 11 Cal.4th at p. 362.) When the appellate court exercises its independent judgment as to the objective portion of this test, it must review the evidence in the light most favorable to the lower court's ruling. (*Williams*, *supra*, 45 Cal.3d at p. 1301; *Renteria*, *supra*, 2 Cal.App.4th at p. 442.)

As the investigating officers approached the property at 1130 Oregon Street, they found a main dwelling that was posted as condemned. There was a chainlink fence and a

8.

wooden fence on the property. The gates to both the chainlink fence and the wooden fence were open. The garage door was open. The neighborhood was known to the officers for drug and gang activity. Beltran encountered two women in the garage, appellant who was lying face down in the garage, and a second woman standing over her. The act of lying face down in the garage could reasonably be interpreted as an act of concealment by the investigating officer. When Beltran ordered the women out of the garage, she recognized appellant as someone whom Beltran had seen twice before on the same abandoned property.

Under these circumstances, Beltran could reasonably conclude that criminal activity was afoot and was justified in briefly detaining appellant. It is common knowledge that perpetrators of narcotics offenses keep weapons to guard their contraband. (*People v. Gallegos* (2002) 96 Cal.App.4th 612, 629; *People v. Limon* (1993) 17 Cal.App.4th 524, 534–535 (*Limon*); *People v. Huerta* (1990) 218 Cal.App.3d 744, 750.) Coupled with her knowledge that this was a high crime neighborhood known for both drug *and* gang activity and the fact that appellant was not alone in the garage, but was with a companion, Beltran could conduct a brief patdown search consistent with officer safety.

When conducting a patdown search pursuant to *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*), police officers may seize any nonthreatening contraband that they detect by plain feel or touch. (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373.) Whether the officer detects the contraband by sight or touch, he or she may properly seize it as contraband. (*Id*. at p. 376; *People v. Lee* (1987) 194 Cal.App.3d 975, 983–984 (*Lee*).) Where the container is a common one with legitimate purposes, its presence is usually not enough to establish probable cause. (*Limon*, *supra*, 17 Cal.App.4th at p. 537; *People v. Holt* (1989) 212 Cal.App.3d 1200, 1206–1207 [foil-wrapped package]; *People v. Valdez* (1987) 196 Cal.App.3d 799, 806–807 [film canister].) Where the container is distinctive in nature, however, an officer, based on his or her experience, has probable cause to seize it if it is

9.

in plain view.  (*Limon*, *supra*, at p. 537; *People v. Lilienthal* (1978) 22 Cal.3d 891, 898–899 [cocaine in paper bindle]; *Lee*, *supra*, at pp. 979, 984 [heroin balloon].)

In *People v. Nonnette* (1990) 221 Cal.App.3d 659, 665 (*Nonnette*), officers found a car parked for some time in a high crime area of Sacramento registered to an address in Los Angeles.  There was a prescription bottle in the car and small, empty baggies.  Four males were ducking up and down in the car, and only one had identification.  *Nonnette* held that the officers had probable cause to believe the car, or a container in it, held contraband and for the officers to seize a purse in the car that contained contraband. (*Ibid*.)

In *Limon*, officers conducted a patdown search of the defendant that was found to be justified for officer safety.  (*Limon*, *supra*, 17 Cal.App.4th at pp. 534–535.)  During the patdown of the defendant, officers found a hide-a-key box in the defendant's pocket. Given other circumstances indicating that the defendant was exchanging and concealing drugs, along with the fact that the defendant was found in a high crime neighborhood, the court in *Limon* found the officers had probable cause to look in the key box because of the high probability it contained narcotics.  (*Id*. at pp. 536–537.)

In reviewing the totality of the surrounding circumstances showing probable cause to conduct an arrest, courts should take into account such things as (1) the officer's experience, which can make otherwise innocent looking conduct to a layperson look suspicious to the officer; (2) prior contacts between the officer and the suspect; (3) the officer's awareness that the area is known for street drug transactions; (4) the defendant's conduct, including covert or secretive display, transfer or exchange; (5) the catching of an object that was given or received in a peculiar receptacle designed for a different or specialized purpose; (6) some indication by the defendant of a consciousness of guilt. (*People v. Guajardo* (1994) 23 Cal.App.4th 1738, 1742.)

The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct.  The principal function

of the officer's function of his or her investigation is to resolve the ambiguity and establish whether the conduct is legal or illegal. (*In re Tony C*. (1978) 21 Cal.3d 888, 894; *Limon*, *supra*, 17 Cal.App.4th at p. 533.)

During the patdown search, Beltran encountered rolled currency sticking out of appellant's tank top and/or bra. This location for storing currency, and the fact that the currency was rolled up, was suspicious. Beltran looked around appellant's side and saw the rolled up currency in plain view. Beltran was trained in narcotics investigations and had worked undercover in over 50 such investigations. Beltran testified that drugs were commonly stored in rolled up currency.[4] Given the high crime profile of the neighborhood, appellant's two prior appearances on an abandoned property, appellant's bizarre position lying face down on the floor of the abandoned garage and property, and the location of rolled up currency sticking out of appellant's tank top and bra, we find this case analogous to *Limon* and *Nonnette*. We further find that the manner of the patdown search itself was not overly intrusive. (*Lee*, *supra*, 194 Cal.App.3d at pp. 984–985.)

Even if the detached garage did not have a posted condemnation sign, Beltran began her investigation with reasonable suspicion that criminal activity was afoot and could proceed with a *Terry* stop. Beltran had probable cause based on her training and experience, as well as the multiple suspicious circumstances discussed above, to remove the rolled up currency to determine whether it contained contraband. While doing so, the plastic baggie containing what appeared to be methamphetamine fell out of appellant's clothing to the ground in plain view. Beltran then had probable cause to arrest appellant for possession of narcotics. We conclude the trial court did not err in denying appellant's suppression motion.

---

[4]     Multiple published cases in California describe defendants using rolled bills, or currency, to snort narcotics. (*Weil v. Federal Kemper Life Assurance Co*. (1994) 7 Cal.4th 125, 190; *People v. Hernandez* (1999) 71 Cal.App.4th 417, 420; *People v. Hernandez* (1993) 18 Cal.App.4th 1840, 1842; *People v. Moran* (1974) 39 Cal.App.3d 398, 403.)

## DISPOSITION

The judgment is affirmed.

_____

DETJEN, J.

I CONCUR:

_____

POOCHIGIAN, J.

KANE, Acting P.J., Dissenting.

I dissent. The motion to suppress should have been granted. Although the detention was lawful, the seizure of the contraband was not incident to a lawful arrest and was not the product of a lawful search for weapons under *Terry*. [1]

Law enforcement may detain an individual where there is an articulable suspicion that a person has committed or is about to commit a crime. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 123.) In considering the issue of a warrantless search on appeal, the appellate court defers to factual findings of the trial court, express or implied, where supported by substantial evidence, but uses independent judgment to analyze whether those facts meet the constitutional standard. (*People v. Glaser* (1995) 11 Cal.4th 354, 362; *People v. Lucatero* (2008) 166 Cal.App.4th 1110, 1114.)

There is no dispute that appellant was detained for investigation. She contends that she was unlawfully detained. "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

Officer Beltran testified that she detained appellant because she believed a violation of the Bakersfield Municipal Code regarding posted buildings might be occurring, and she was investigating that crime. The Bakersfield Municipal Code allows for a building or structure or property to be "posted" when inspectors believe it is unsafe for entry. A posted building may only be entered for limited purposes. Bakersfield Municipal Code section 8.80.060, subdivision (D) and following provides:

> "D.    Imminent Threat to Health and Safety of Residents or Public. If the code enforcement officer determines that a building or structure is in such condition as to make it immediately dangerous to the life, limb,

---

[1]    *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*).

property or safety of the occupants or the public, it shall be ordered to be vacated, secured and maintained against entry.

"E.     Posting of Property Ordered to Be Vacated.  Every property ordered to be vacated shall be posted at or upon each exit of the building and shall be substantially in the following form:

"DO NOT ENTER

"UNSAFE TO OCCUPY

"It is a misdemeanor to occupy this building or to remove or deface this notice.

"CITY OF BAKERSFIELD

"CODE ENFORCEMENT DIVISION

"F.     Compliance with Order to Vacate.  Where a property has been posted and ordered to be vacated as set forth in this section, notice of such vacation shall be provided to the property owner.  No person shall remain in or enter any building which has been posted, except that entry may be made to repair, demolish or remove such building where any required permit to do so has been acquired.  No person shall remove or deface any such notice after it is posted until the required repairs, demolition or removal have been completed and a certificate of occupancy issued.  Any person violating this subsection shall be guilty of a misdemeanor.  (Ord. 4346 § 1 , 2006; Ord. 3666 § 2, 1995)"

Officer Beltran had prior experience with people trespassing on the property, and she was aware that the property had been posted.  It was apparent to the officer that there might not be a lawful basis for an individual to be on the property.  The totality of the circumstances in the present case made it reasonable for the officer to conduct a further investigation as to why the individuals were on the property and whether that presence was lawful.  The findings of the trial court in this regard are amply supported by the evidence.  The detention for questioning was lawful.

Having lawfully detained appellant, Officer Beltran then testified that she conducted a patdown search for officer safety.  An officer observing conduct that leads him or her to believe criminal conduct may be afoot may briefly stop the person and make reasonable inquiries, and where the officer believes the person may be armed, he or she may conduct a patdown search to see whether weapons are present.  (*Terry*, *supra*,

2.

392 U.S. at p. 30; *Adams v. Williams* (1972) 407 U.S. 143, 145–146.)  The search must be confined in scope to "'an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.'  (Citation.)" (*People v. Dickey* (1994) 21 Cal.App.4th 952, 955–956.)  "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed.  (Citation.)" (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373.)

In the present case, Officer Beltran's actions in briefly pat searching appellant were not supported by any reason to believe appellant was armed.  The officer could see that the appellant had on a tank top, and there was no articulated reason why the officer would believe appellant was armed.  There was no evidence that appellant was wearing a sweater or indeed any clothing that could hide a weapon.  Although the area was a high gang area, there is no indication that appellant was in a gang or that the officer knew of gang involvement.  The events occurred at 6:00 p.m. in May.  The officer had no articulated basis for conducting a patdown search of appellant.

Even assuming the patdown search was appropriate, the subsequent seizure of the currency, which contained the contraband, was not.  Officer Beltran testified that she observed rolled up currency in appellant's bra and removed it to check for contraband. The officer did not believe the bill was a weapon or that it contained a weapon.  The removal of the bill could not be justified as a *Terry* search.

"If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." (*Minnesota v. Dickerson*, *supra*, 508 U.S. at pp. 375–376, fn. omitted.)

An officer, having felt or seen an object, may not remove an item unless its contour or mass makes its identity as narcotics or contraband "'"immediately apparent."'" (*Minnesota v. Dickerson*, *supra*, 508 U.S. at p. 375.) In *Minnesota v. Dickerson* for example, the search was found to be invalid where the officer was able to determine that a small lump in the defendant's jacket was narcotics only by manipulating the lump with his fingers. (*Id.* at p. 378.)

In the present case, Officer Beltran removed the currency to investigate whether it contained contraband, which was not "'"immediately apparent."'" (*Minnesota v. Dickerson*, *supra*, 508 U.S. at p. 375.) Under the authority of *Minnesota v. Dickerson*, the removal of the dollar bill was an unauthorized extension of a *Terry* search. The motion to suppress should have been granted.

The People contend the search was justified as one incident to arrest. However, appellant had not been arrested prior to the time the contraband was located. Officer Beltran did not contend this was a search incident to arrest, and there is no evidence that a decision regarding arrest had been made at the time of the search. A search incident to arrest may be justified where the officer had probable cause to arrest appellant prior to the pat search and removal of the dollar bill. (See *People v. Dibb* (1995) 37 Cal.App.4th 832, 837.) An officer may thoroughly search a person prior to actual arrest so long as he or she has probable cause. (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1076–1077.)

> "No exact formula tells us how to decide whether there was probable cause to arrest. Instead, we look to the totality of the surrounding circumstances and decide each case on its own facts, taking into account such things as (1) the officer's experience (which may render suspicious that which appears innocent to a layman); (2) the officer's prior contacts with the suspect; (3) the officer's awareness that the area is one known for street drug transactions; (4) the defendant's conduct (such as a covert or secretive display, transfer or exchange); (5) a caching of an object given or received in a peculiar receptacle designed for a different, specialized purpose; (6) some indication by the defendant of a consciousness of guilt; and so on. [Citations.]" (*People v. Guajardo* (1994) 23 Cal.App.4th 1738, 1742.)

4.

The record does not indicate prior contact involving narcotics with appellant. Appellant responded to the officer's request to come out of the building, and there is no indication in the record of any furtive gestures or other suspicious activities. Officer Beltran had made no inquiry as to the legitimacy of appellant's presence on the property prior to the search. Finally, the municipal code ordinance allegedly violated makes an exception for individuals present to do repairs or work pursuant to a permit. No information was available at the time of the search to indicate that appellant's presence was not legitimate. Officer Beltran was at the beginning of her investigation at the time of the search and did not yet have probable cause to arrest. The search cannot be justified as a search incident to arrest.

For these reasons the motion to suppress should have been granted.

_____
KANE, Acting P.J.

5.