Filed 8/19/16  P. v. Washburn CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C076652 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF133885) |
| v. | |
| BARBARA LYNNE WASHBURN, | |
| Defendant and Appellant. | |

Defendant Barbara Lynne Washburn filed a motion pursuant to Penal Code section 1538.5[1] to suppress drugs and drug paraphernalia found during a warrantless search of her car in the Cache Creek Casino parking lot.  The trial court denied the motion, and defendant pleaded no contest to possession of methamphetamine (Health &

---

[1]     Further unspecified references are to the Penal Code.

1

Saf. Code § 11377, subd. (a)) in exchange for a grant of Proposition 36 probation and dismissal of other charges against her.

On appeal, defendant challenges the denial of her motion to suppress contending there was no probable cause to search her vehicle and thus the warrantless search violated her rights under the Fourth Amendment to the United States Constitution. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are taken from the transcript of the preliminary hearing, which was adopted by the parties and the court as the factual basis for defendant's plea. Defendant's motion to suppress was heard concurrently with the preliminary examination. The primary witness, Deputy Reiko Matsumura, testified as follows:

On September 1, 2013, Cache Creek Casino security summoned Deputy Matsumura to the casino to review surveillance videotape of the casino parking lot. She observed defendant approach a black Ford Escort, empty the contents of her purse onto the trunk, and then get into the car and roll down the windows. She further observed defendant smoking something, but because the car's windows were tinted, she could only see defendant's silhouette sitting in the passenger seat. She was, however, able to see white puffs of smoke coming from "the area where [defendant's] head would be as she was sitting in the passenger seat." Deputy Matsumura believed the smoke emanating from the car was consistent with what one would see if someone were smoking a controlled substance. Based on the deputy's experience and training, she was able to differentiate between smoke ingested from a cigarette and smoke ingested from a controlled substance, which "has a thicker consistency and . . . shows up on the [surveillance] cameras as more of a white cloud." The video showed defendant was in the car for "at least a half an hour."

Next, Deputy Matsumura and casino security personnel located defendant and a male companion, Shawn Wirth, inside the casino and asked to speak with them. Defendant and Wirth agreed and walked with Deputy Matsumura and casino security to

2

an employee area away from the casino floor. After separating defendant and Wirth, Deputy Matsumura asked defendant if she had anything illegal on her person. Defendant said she did not and consented to a search of her purse. Deputy Matsumura searched defendant's purse but found nothing of interest. She inquired whether defendant had made any trips to the car. Defendant said she had gone to the car to smoke a cigarette, and had given her pack of cigarettes to Wirth. She also said she had been smoking an electronic cigarette (e-cigarette). An e-cigarette was found in defendant's purse. Deputy Matsumura asked if there was anything illegal in defendant's car. Defendant denied there was and consented to a search of the vehicle. During this exchange, Deputy Matsumura observed defendant was fidgety, having trouble staying still, and speaking rapidly. She shined a flashlight in defendant's eyes and noticed her pupils did not react. Based on Deputy Matsumura's training and experience, she recognized these circumstances as signs of being under the influence of a controlled substance.

Deputy Matsumura left defendant with security personnel and focused her attention on Wirth in the next room. As she spoke with Wirth, she heard defendant yelling from the other side of the door. She went back to check on defendant, who was upset and yelling. Defendant yelled, "Fuck you, I don't want you in my car, go ahead and arrest me," and stepped towards her. Deputy Matsumura told defendant to step back. Although she felt she had sufficient information to arrest defendant for being under the influence of a controlled substance, Deputy Matsumura did not arrest her at that time and instead placed her in handcuffs and detained her in a casino holding cell.

Next, Deputy Matsumura searched defendant's car to look for controlled substances. The search revealed a bag containing a glass smoking pipe with residue and a bag of a crystal substance, later determined to be 3.2 grams of methamphetamine,

3

located between the passenger seat and the center console. Deputy Matsumura advised defendant of her *Miranda*[2] rights and transported her to jail.

Sheriff's Deputy Charles Hoyt also testified, stating that defendant admitted having used methamphetamine on and off for the past 10 years, having last smoked methamphetamine earlier that day in San Francisco, and having smoked only an e-cigarette at the casino.

On cross-examination, Deputy Matsumura acknowledged she had no training regarding e-cigarettes, and that the white smoke she observed on the surveillance tape could have come from an e-cigarette.

*Denial of Motion to Suppress*

The magistrate denied defendant's motion to suppress, stating in part as follows:

"The officer did—the deputy did approach [defendant] in the casino and asked her to—if she would mind accompanying her out so she could talk to her. [¶] I do find that the initial contact was consensual in nature. I do find that based on the officer's observation of [defendant] at the time she talked to her, she had previously seen a video which reflected in her mind somebody who was smoking methamphetamine. [¶] And what was the basis of that? She indicated that based on her training and experience the puff of white smoke which was consistent with somebody smoking methamphetamine was a basis for her to make the inquiry of [defendant]. [¶] Furthermore, the officer, or deputy, had an observation of the defendant's condition at the time. She was fidgety. She did—was speaking rapidly. She was having trouble standing still. She also made observations about her eyes, which were consistent in the deputy's mind with somebody who was under the influence of methamphetamine.

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*).

4

"The detention was made, the officer indicated, for safety reasons. Given the display of aggressive behavior that was demonstrated in the hallway, I do find that the consent that was initially given to the officer to search the vehicle and also searching of the purse—well, searching of the purse, certainly, and looking through the purse at items that were there was done consensually.

"The consent of the vehicle was initially given but then withdrawn. I do find that based on the language that was given it's clearly evident that whatever consent may have been given earlier was being withdrawn by the defendant here. The question is whether or not there was a sufficient basis for the officer to go forward and search the vehicle, and I do find, based on the observations of the defendant being under the influence and, also, the white smoke, which was consistent with somebody smoking methamphetamine, was a reasonable basis, probable cause, more probable than not, that the—in the vehicle would be located possible controlled substances.

"There was no controlled substance found in the purse. The question is whether or not the electric cigarette should have been something that they stopped and investigated to see whether or not an electric cigarette produces the kind of smoke the officer said was seen inside the car, which was consistent with smoke from somebody smoking methamphetamine, but I do find that if you look at what her training and experience told her about the cloud of smoke that she saw that more probable than not that that was methamphetamine that was being smoked.

"The officer did have, in the Court's view, probable cause to search the car, and I do find, based on everything, the totality of circumstances, the surveillance footage, the observations of the deputy of the [defendant's] condition at the time, and the fact that she was under arrest at that time that the search of the vehicle was appropriate, and there was probable cause to believe that the controlled substance that was not in the purse, that was not in the pockets of the defendant, was to be found in the vehicle where the methamphetamine, apparently according to the officer, may have been smoked, and I do

5

find based on the totality of circumstances, therefore, that the motion to suppress will be denied."

In response to the prosecutor's comment that, according to Deputy Matsumura's testimony, defendant was not under arrest at the time of the vehicle search, the court clarified its ruling as follows:

"The Court is finding it principally on the ground of the observations from the surveillance footage, observations which indicated a puff of white smoke consistent with methamphetamine use, consistent as well with the observations of the officer that the defendant was under the influence of a central nervous system stimulant, and based on that, and the absence of contraband on the defendant's person, that there was probable cause to believe there was contraband in the vehicle, and that is the basis for the Court's belief."

*Denial of Motion to Dismiss*

Defendant filed a motion to dismiss (§ 995) in the trial court, renewing her claim that Deputy Matsumura lacked probable cause to search the car and asserting the trial court erred in denying her suppression motion. The court denied the motion, stating as follows:

"I believe the People concede that the defendant withdrew her consent to search the vehicle, so the issue in the Court's mind is whether or not the automobile exception applied to the warrant rule.

"In order for the automobile exception to apply, there must be objective facts known to the officer that would justify the issuance of a search warrant. In this case, the officer saw via a surveillance video that the defendant was smoking something in the vehicle, but was unable to see what the person was smoking, whether it was a pipe or a cigarette or some other device. And the Court agrees that if that was all the information the officer had, that would not be sufficient to get a search warrant or invoke the automobile exception.

6

"In addition to that information, the officer had contact with the defendant who appeared to be under the influence based upon observing her eyes, and then she demonstrated agitated and somewhat aggressive conduct. In addition, he [*sic*], with her consent, searched her purse and did not find any controlled substance.

"Based on her objective appearance, the Court believes he [*sic*] had probable cause to arrest her. And based upon the lack of controlled substance or pipes or devices in her purse, had objective facts to believe that the thing that she was smoking in the car was a controlled substance.

"I would also note that the defendant made a statement, just arrest me, which would suggest that she believed she—the officer had a right to arrest her, but that may be subject to interpretation. Even without that, the Court believes that the officer had objective facts that would justify getting a search warrant for the vehicle, and, thus, the automobile exception applies. And for that reason, the search was legal, and the motion to set aside the information as to Count[s] 1 and 3 under Penal Code [section] 995 is denied."

DISCUSSION

Defendant contends Deputy Matsumura lacked probable cause to conduct the warrantless search of her car because there were no objective facts to support the inference that (a) she was smoking a controlled substance in the car or (b) the controlled substance would still be present in the car hours later. As such, the items found in the search should have been suppressed. As we will explain, Deputy Matsumura had probable cause under the "automobile exception" to search defendant's car for drugs.

In reviewing the trial court's denial of a motion to suppress evidence pursuant to section 1538.5, we consider the record in the light most favorable to the trial court's disposition and defer to the trial court's factual findings, whether explicit or implicit, if supported by substantial evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 979; *People v. Weaver* (2001) 26 Cal.4th 876, 924.) Any conflicts in the evidence are resolved in favor

7

of the trial court's order.  (*People v. Limon* (1993) 17 Cal.App.4th 524, 529.)

Additionally, " ' "[when] two or more inferences can reasonably be deduced from the facts," either deduction will be supported by substantial evidence, and "a reviewing court is without power to substitute its deductions for those of the trial court." [Citation.]' [Citation.]" (*In re Eric J.* (1979) 25 Cal.3d 522, 527.)  We exercise our independent judgment to determine whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment of the federal Constitution.  (*People v. Weaver, supra*, at p. 924.)  We affirm the trial court's ruling if it is correct on any theory of applicable law, even if for reasons different than those given by the trial court.  (*People v. Evans* (2011) 200 Cal.App.4th 735, 742; *People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.)

Under the automobile exception to the Fourth Amendment's warrant requirement, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." (*Pennsylvania v. Labron* (1996) 518 U.S. 938, 940 [135 L.Ed.2d 1031, 1036]; see *United States v. Ross* (1982) 456 U.S. 798, 808 [72 L.Ed.2d 572, 583].)  "Probable cause for a search exists where an officer is aware of facts that would lead a [person] of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched.  [Citations.]" (*People v. Dumas* (1973) 9 Cal.3d 871, 885.)  "In determining probable cause we must make a 'practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation.]" (*People v. Allen* (2000) 78 Cal.App.4th 445, 450, quoting *Illinois v. Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548].)

Here, Deputy Matsumura had sufficient facts to lead an ordinary person to entertain a strong suspicion that drugs would be found in defendant's car.  The deputy viewed the casino's surveillance tape and saw what, according to her training and experience, appeared to be defendant smoking a controlled substance.  She then asked to

8

speak with defendant and, during the course of that conversation, observed that defendant was talking rapidly, fidgeting, and having trouble standing still. She also found defendant's pupils unreactive. Within minutes of Deputy Matsumura speaking with Wirth, defendant became combative and aggressive. Although Deputy Matsumura did not arrest defendant at that point for being under the influence of a controlled substance, she felt she had sufficient information to do so. Because no drugs were found on defendant's person or in her purse, and given the surveillance footage of defendant in the car smoking something that appeared to be a controlled substance, Deputy Matsumura believed she might find drugs in defendant's car. Under these circumstances, there was a fair probability drugs would be found in the car.

Defendant argues the objective facts (i.e., she told Deputy Matsumura she had been smoking a cigarette in the car; an e-cigarette was found in her purse; she put a pack of cigarettes on the trunk while she rummaged through her purse; she rolled down the car windows and smoked "openly"; and Deputy Matsumura acknowledged an e-cigarette could have produced the smoke seen on the surveillance video) lead to an inference that she was smoking an e-cigarette, not a controlled substance. She asserts that because Deputy Matsumura never testified which controlled substance would create the white smoke seen on the surveillance video or whether her behavior was consistent with that particular substance, and because she acknowledged the smoke could have come from an e-cigarette, her belief that it came from a controlled substance was not objectively reasonable. We are not persuaded.

Deputy Matsumura's belief regarding the origin of the smoke is not dispositive of the issue of probable cause. Her belief that there would be drugs in the car was based on a collection of facts—defendant's physical manifestation of the signs and symptoms of drug use, the absence of drugs on defendant's person or in her purse, and that defendant appeared to be smoking a controlled substance in the car—all of which led to "[a] 'practical, nontechnical' probability that incriminating evidence [was] involved . . . .

9

[Citation.]" (*Texas v. Brown* (1983) 460 U.S. 730, 742 [75 L.Ed.2d 502, 514].) Even assuming a reasonable person could have reached a different conclusion, as we previously stated, " ' "[when] two or more inferences can reasonably be deduced from the facts," either deduction will be supported by substantial evidence, and "a reviewing court is without power to substitute its deductions for those of the trial court." [Citation.]' [Citation.]" (*In re Eric J., supra*, 25 Cal.3d at p. 527.)

Similarly, we reject defendant's assertion that there were no objective facts to support an inference that drugs would still be present in the car three hours after she was seen smoking given the possibility she used up the entire quantity of drugs, given the remainder to a third party, or put the remainder somewhere other than in the car. Again, a finding of probable cause does not rely on an absence of all other potential explanations, nor does it require proof beyond a reasonable doubt. (*Illinois v. Gates, supra*, 462 U.S. at p. 235.) Defendant was seen smoking in the car for more than 30 minutes. She then spent the next several hours in the casino, where she was ultimately located by Deputy Matsumura. When questioned, defendant manifested signs and symptoms of being under the influence but did not have drugs on her person or in her purse. Under those circumstances, it was reasonable to infer there would be drugs in the car.

We conclude there was probable cause to search the car.

DISPOSITION

The judgment is affirmed.

     NICHOLSON     , Acting P. J.

We concur:

     BUTZ     , J.

     HOCH     , J.